**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **TRENTON PUBLIC SCHOOL DISTRICT BOARD OF EDUCATION**, <br><br> Plaintiff, <br><br> v. <br><br> **S.M.** *on behalf of D.M.*, ***et al.***, <br><br> Defendants. | Civil Action No. 24-9269 (ZNQ) (JBD) <br><br> **OPINION** |

**QURAISHI, District Judge**

  **THIS MATTER** comes before the Court under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, *et seq.*, and specifically under its "stay-put" provision, 20 U.S.C. § 1415(j). Plaintiff Trenton Public School District Board of Education ("Plaintiff" or "Trenton BOE") appeals the decision of the Administrative Law Judge ("ALJ") ("ALJ Opinion," ECF No. 1-4, Ex. A.) Plaintiff seeks an emergency declaratory judgment under 28 U.S.C. § 2201(a), a preliminary injunction, and a stay of the ALJ's order. Plaintiff submitted a Complaint ("Compl.," ECF No. 1), a brief in support of its appeal ("Plaintiff's Br.," ECF No. 1-3), and various exhibits (ECF No. 1-4, at 1-477.) Defendant S.M. filed a brief in opposition to Plaintiff's emergency requests ("Opp'n Br.," ECF No. 9), and Defendant STEMCivics Charter School submitted a letter response ("Letter Br.," ECF No. 10.) Plaintiff filed a reply. ("Reply Br.," ECF No. 11.)

  The Court has carefully considered the parties' submissions and decides the appeal without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the

1

reasons set forth below, and other good cause shown, Plaintiff's application is **DENIED**, and the September 9, 2024 Order on Emergent Relief from the ALJ is **AFFIRMED**. The Court finds that student D.M.'s then-current placement under his January Individualized Education Plan ("IEP") shall remain in effect pending the due process petition and any subsequent appeals. D.M.'s diploma from Trenton BOE shall be rescinded.

I. **BACKGROUND AND PROCEDURAL HISTORY**

   A. **FACTUAL BACKGROUND**

S.M. and D.M. are residents of Trenton, New Jersey. (Compl. ¶ 1.) D.M. attended Defendant STEMCivics Charter School ("the Charter School") from tenth grade beginning in September 2021, through nearly all of twelfth grade, then withdrew from the school on May 16, 2024. (*Id.* ¶¶ 3, 8.) During D.M.'s twelfth grade year, the Charter School conducted an IEP meeting that resulted in an IEP, effective January 2, 2024 to January 1, 2025 ("the January IEP"). (*Id.* ¶ 12; ALJ Opinion at 3.) Another IEP meeting was held in April 2024 because S.M. sought transition services for D.M. (Compl. ¶ 13; ALJ Opinion at 3.) The Charter School advised S.M. that such transition services were only available through the Trenton Public School system, and S.M. should therefore withdraw her son from the Charter School and enroll him in the Trenton Public School District. (Compl. ¶ 14.) As a result, in April 2024, the Charter School created an updated IEP dated April 25. 2024 through April 25, 2025, to reflect D.M.'s need for transition services ("the April IEP"). (*Id.* ¶¶ 16–17; ALJ Opinion at 3.) S.M. signed the April IEP on May 17, 2024, one day after S.M. withdrew D.M. from the Charter School. (*Id.* ¶¶ 16–17; ALJ Opinion at 3.) As stated by the ALJ,

> [t]he main difference between the two charter school IEPS [the January and April IEPs] is reflected in classroom placement and in the "Student's Desired Post Secondary Outcomes (Future Visions)" sections. The January 2024 IEP specifies placement as 80% or more

> in presence of regular education students. . . . In contrast, the April 2024 IEP specifies placement should be less than 40% in presence of regular education students. . . . Additionally, the April 2024 IEP requires self-contained classroom[s] for mathematics, language arts and science; the January 2024 IEP requires in class supports. The charter school does not have self-contained classrooms, thus D.M. was not in self-contained classroom as specified in the April 2024 IEP at the time he transferred to Trenton.

(ALJ Opinion at 3.)

In order to receive the transition services for D.M., including giving him self-contained classrooms, S.M. withdrew her son from the Charter School on May 16, 2024, and transferred him to the Trenton BOE.[1] (Compl. ¶¶ 20, 25; ALJ Opinion at 3–4.) D.M. was formally registered in the Trenton Public School District on June 3, 2024. (Compl. ¶ 27; ALJ Opinion at 2, 3.) After registration, the Trenton BOE sought D.M.'s school records including the two prior IEPs—the January and April IEPs. (ALJ Opinion at 4.) Trenton BOE thereafter convened an IEP meeting where a transfer IEP was created dated June 21, 2024 to June 25, 2024, under which the school district sought to graduate D.M (the June IEP). (Compl. ¶ 27; ALJ Opinion at 2.) S.M. was present at the meeting but refused to sign any documents or otherwise give consent to the IEP given that S.M. wanted her son to receive services offered by the Trenton Public School District beyond the age of eighteen. (Compl. ¶¶ 36, 42; ALJ Opinion at 5.)

Despite S.M.'s objections, Trenton BOE provided D.M. with a state-issued diploma on June 24, 2024, constituting a change of placement under N.J. Admin. Code § 6A:14-2.3(f) and (g). (Compl. ¶¶ 45, 49.) The following day, S.M. received D.M.'s graduation notice, which contained the following language: "You have a right to review and consider this decision. However, the determination that [D.M.] will graduate will become effective 15 days after you receive this notice

---

[1] According to the ALJ, because the April 2024 IEP was not implemented prior to leaving the charter school—it was signed one day after S.M. withdrew D.M.—the then-current placement plan was based on the January 2024 IEP.

3

unless you initiate mediation or a due process hearing to dispute this decision." (ALJ Opinion at 5. (alteration in original)).

### B. PROCEDURAL HISTORY

#### 1. Proceedings Before the ALJ

On July 2, 2024, S.M. filed a Petition for Due Process to prevent D.M.'s graduation and demand the implementation of D.M.'s April 25, 2024 IEP. (Compl. ¶ 52.) On August 19, 2024, S.M. filed an Application for Emergent Relief with the Office of Special Education in the New Jersey Department of Education seeking a decision that prevented D.M.'s graduation and a "stay-put" order. (ECF No. 1-4, Ex. M.) Oral Argument was held before the ALJ on September 6, 2024. (ALJ Opinion at 2.)

On September 9, 2024, the ALJ issued her decision. (ALJ Opinion.) The ALJ first concluded that S.M.'s petition for emergent relief was properly brought because her due process proceeding was timely initiated and her emergent hearing "touches upon a change in placement." (ALJ Opinion at 6.) Relying on Third Circuit precedent, the ALJ concluded that "petitioner is entitled to stay-put in D.M.'s then-current placement until [his] underlying due process petition is resolved. Since the April 2024 IEP was not implemented prior to leaving the charter school . . . the then-current placement is based on the January IEP." (*Id.*) In rejecting Trenton BOE's argument that graduation is a change of placement and therefore S.M. is not eligible for the relief she seeks, the ALJ reasoned that "[c]reating a three-day IEP, 'graduating' D.M. within those three days, and sending a diploma while a due process petition is pending does not erase the rights of the petitioner to challenge those actions." (*Id.* at 7.) Thus, according to the ALJ, Trenton BOE was required to give S.M. the full fifteen days to object to the proposed IEP. (*Id.*) And because S.M. timely challenged the June IEP, the ALJ concluded that D.M. was entitled to stay-put under

the January IEP. (*Id.*) The ALJ ordered the parties to schedule a new IEP meeting to implement the then-current IEP and transition services. (*Id.*)

### 2. Proceedings Before this Court

On September 18, 2024, Plaintiff Trenton BOE filed a Motion for a Preliminary Injunction pursuant to Fed. R. Civ. P. 65, and sought declaratory relief under the Declaratory Judgment Act, 28 U.S.C. § 2201(a), and a stay of the ALJ's order before this Court. Plaintiff filed a "Verified Complaint Seeking Interlocutory Appeal" challenging the ALJ's September 9, 2024 Stay-Put Order. (ECF No. 1-3.) On September 23, 2024, the Court conducted a case management conference regarding Trenton BOE's application, whereupon it issued a text order requiring Defendants to respond by a certain date. (ECF Nos. 5, 6.) On October 4, 2024, S.M. and the Charter School submitted independent briefs in opposition to Trenton BOE's request for injunctive relief (ECF Nos. 9, 10), to which Trenton BOE replied (ECF No. 12.)[2]

## II. SUBJECT MATTER JURISDICTION

District courts "have federal question jurisdiction pursuant to 28 U.S.C. § 1331 for claims under the IDEA," but this jurisdiction is normally "subject to the requirement that administrative remedies have been exhausted." *Gloucester Twp. Bd. of Educ. v. E.N. on Behalf of A.N.*, Civ. No. 21-939, 2022 WL 1104848, at *1 (D.N.J. Apr. 13, 2022); *see also Batchelor v. Rose Tree Media Sch. Dist.*, 759 F.3d 266, 272 (3d Cir. 2014) ("In the normal case, exhausting the IDEA's

---

[2] The Court need not address the four factors set forth in *Winter v. Natural Resource Defense Council, Inc.*, 555 U.S. 7 (2008), for adjudicating preliminary injunction applications because "Section 1415(e)(3) of the IDEA functions, in essence, as an automatic preliminary injunction . . . the statute substitutes an absolute rule in favor of the status quo for the court's discretionary consideration of the factors of irreparable harm and either a likelihood of success on the merits or a fair ground for litigation and a balance of hardships." *Drinker by Drinker v. Colonial Sch. Dist.*, 78 F.3d 859, 864 (3d Cir. 1996) (quoting *Zvi D. v. Ambach*, 694 F.2d 904, 906 (2d Cir.1982)). Indeed, when ruling on stay-put disputes, courts do not regularly analyze all of the factors considered for a "traditional" preliminary injunction. *See, e.g.*, *J.E. ex rel. J.E. v. Boyertown Area Sch. Dist.*, 452 F. App'x 172, 177 (3d Cir. 2011) ("[N]o analysis of the factors a court typically considers in awarding injunctive relief was required."); *B.A.W. v. E. Orange Bd. of Educ.*, Civ. No. 10-4039, 2010 WL 3522096, at *4 (D.N.J. Aug. 31, 2010) ("Given its function as an 'automatic preliminary injunction,' . . . the Court need not apply the standard test for a preliminary injunction pursuant to [Rule] 65.").

administrative process is required in order for the statute to 'grant[ ] subject matter jurisdiction to the district court.'" (quoting *Komninos by Komninos v. Upper Saddle River Bd. of Educ.*, 13 F.3d 775, 778 (3d Cir. 1994))). Nevertheless, federal courts have "accept[ed] jurisdiction of stay-put disputes, and the [Third Circuit] has expressed no concern about the jurisdictional basis." *Cinnaminson Twp. Bd. of Educ. v. K.L.*, Civ. No. 16-3586, 2016 WL 4212121, at *3 (D.N.J. Aug. 9, 2016) (quoting *R.S. v. Somerville Bd. of Educ.*, Civ. No. 10-4215, 2011 WL 32521, at *7 (D.N.J. Jan. 5, 2011)); *see also E.O. v. Teaneck Bd. of Educ.*, Civ. No. 20-4803, 2020 WL 4559083, at *3 (D.N.J. Aug. 7, 2020) ("[W]eight of authority supports . . . [the] argument that exhaustion is unnecessary" when challenging a "stay-put" order.). Accordingly, this Court can exercise jurisdiction over Plaintiff's challenge to the ALJ's September 9, 2024 Stay-Put Order notwithstanding the administrative proceedings that remain ongoing.

### III.   LEGAL STANDARD

#### A.   STANDARD OF REVIEW

When reviewing a challenge to an administrative decision in an IDEA case, the district court generally applies a modified version of *de novo* review, and the court is required to give due weight to the factual findings of the ALJ. *See Q.T. on behalf of H.P.-B. v. Pottsgrove Sch. Dist.*, 70 F.4th 663, 666 (3d Cir. 2023) (citing *P.P. ex rel. Michael P. v. W. Chester Area Sch. Dist.*, 585 F.3d 727, 734 (3d Cir. 2009)). "'Factual findings from the administrative proceedings are to be considered *prima facie* correct,' and if the reviewing court does not adhere to those findings, it is 'obliged to explain why.'" *Id.* (quoting *W. Chester Area Sch. Dist.*, 585 F.3d at 734). When the challenge is to an ALJ's determination of a student's "current educational placement," however, courts exercise plenary review as to this question of law. *See Drinker by Drinker*, 78 F.3d at 865 ("Our review of this legal issue is plenary.").

## B. IDEA'S STAY-PUT FRAMEWORK

The IDEA "requires participating states to provide disabled children with a free and appropriate education." *Gloucester Twp. Bd. of Educ.*, Civ. No. 21-939, 2022 WL 1104848, at *1 (citing 20 U.S.C. § 1412(a)(1)(A)). "The premise of the IDEA is that parents and schools working together to design an IEP is the ideal way to reach the statute's goal of a [free and appropriate public education] for every child." *M.R. v. Ridley Sch. Dist.*, 744 F.3d 112, 117 (3d Cir. 2014). In order to accomplish the IDEA's goal, the Act "establishes an elaborate procedural mechanism to protect the rights of those children." *Red Bank Bd. of Educ. v. J.Z.*, Civ. No. 15-5268, 2015 WL 4773392, at *2 (D.N.J. Aug. 13, 2015). The Supreme Court "has made it clear that the procedural rights provided by the IDEA—parents' rights to participation in decisions relating to their children's education—are as important as substantive rights." *P.N. v. Greco*, 282 F. Supp. 2d 221, 237 (D.N.J. 2003) (citing *Board of Education v. Rowley*, 458 U.S. 176, 205–206 (1982)).

One procedural mechanism in the IDEA gives parents the right to an impartial due process hearing on complaints regarding the educational placement of their children, 20 U.S.C. § 1415(b)(2), and to state or federal judicial review of final administrative decisions, *id.* § 1415(e)(2). During the pendency of this administrative process, the Act's "'stay-put' rule[ ] applies." *Drinker by Drinker*, 78 F.3d at 863–64. Section 1415(j) states

> during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child, or, if applying for initial admission to a public school, shall, with the consent of the parents, be placed in the public school program until all such proceedings have been completed.

As briefly explained above, "[t]his provision . . . serves 'in essence, as an automatic preliminary injunction,' reflecting Congress's conclusion that a child with a disability is best served by

7

maintaining her educational status quo until the disagreement over her IEP is resolved." *M.R.*, 744 F.3d at 118 (quoting *Drinker by Drinker*, 78 F.3d at 864) (citation omitted); *see also Y.B. on behalf of S.B. v. Howell Twp. Bd. of Educ.*, 4 F.4th 196, 199–200 (3d Cir. 2021) ("[T]he Supreme Court explained that 'stay-put's' expansive text is limited by the IDEA's purpose—to 'strip schools of the unilateral authority they had traditionally employed to exclude disabled students . . . from school.'" (quoting *Honig v. Doe*, 484 U.S. 305, 323 (1988))).

"The stay-put rule thus requires that the child's placement under the IDEA at the time a disagreement arises between the parents and the school district—what the statute terms the 'then-current educational placement'—be protected while the dispute is pending." *M.R.*, 744 F.3d at 118 (quoting 20 U.S.C. § 1415(j)). To determine a student's "then-current educational placement," district courts "look[ ] to the IEP 'actually functioning when the "stay-put" is invoked.'" *Id.* (quoting *Drinker by Drinker*, 78 F.3d at 867); *see also S.K. ex rel. N.K. v. Parsippany-Troy Hills Bd. of Educ.*, Civ. No. 07-4631, 2008 WL 4561512, at *14 (D.N.J. Oct. 9, 2008) ("In other words, it is generally [but not always] the placement associated with the child's most recent IEP."). "The operative placement could be either a public school or a private school that the local district was financing to satisfy the requirement that every child be given a free, appropriate education." *M.R.*, 744 F.3d at 118.

## C. RELEVANT FEDERAL AND STATE REGULATIONS

In addition to the general requirements set out in the IDEA, state and federal regulations detail the implementation of the statute. *S.H. v. State-Operated Sch. Dist. of City of Newark*, 336 F.3d 260, 264 (3d Cir. 2003); *see, e.g.,* 34 C.F.R. §§ 300.340–300.350 (setting out requirements for IEP); N.J. Admin. Code § 6A:14-1.3 (defining IEP). New Jersey's requirements for developing

an IEP follow the federal requirements. *Fuhrmann v. East Hanover Bd. of Educ.*, 993 F.2d 1031, 1035 (3d Cir.1993).

Relevant here, N.J. Admin. Code § 6A:14-2.3(h)(3) provides that "the district board of education shall implement" an IEP after providing timely notice to a parent, and providing the parents fifteen days to respond, unless:

> (i) The parent disagrees with the proposed action and the district takes action in an attempt to resolve the disagreement; or
>
> (ii) The parent requests mediation or a due process hearing according to [N.J. Admin. Code § 6A: 14-2.6 or 2.7].

N.J.A.C. 6A:14-2.3(h)(3).  Moreover, N.J. Admin. Code § 6A:14-2.3(f) provides that "[w]ritten notice that meets the requirements of this section shall be provided to the parent when a district board of education: (1) [p]roposes to initiate or change the . . . educational placement of the student."  N.J. Admin. Code § 6A:14-2.3(g) further provides the requirements for written notice to a parent, including, for example, that notice be in the parent's native language and include a copy of the IDEA's procedural safeguards.

## IV.   DISCUSSION

### A.   PARTIES' ARGUMENTS

Trenton BOE asks the Court to consider whether the stay-put provision under the IDEA applies given that D.M already graduated and had no "then-current educational placement." (Moving Br. at 4.)  Trenton BOE argues that the ALJ committed several legal errors including (1) failing "to recognize that emergent relief for issues involving graduation must be filed prior to graduation," (2) aiming "to resolve an alleged procedural violation which is appropriate for due process hearing only," and (3) ordering "that Trenton Public Schools rescind D.M.'s lawfully issued diploma." (*Id*. at 15.)  Additionally, Plaintiff contends that because S.M. filed a due process

9

petition after D.M.'s graduation, she cannot receive the relief she is requesting in the Office of Administrative Law. (*Id*. at 17.)

Defendant S.M. argues that because parents have the right to examine all records and notices pertaining to their child, and S.M. objected to D.M.'s graduation notice seven days after receipt, such notice and graduation are ineffective. (Opp'n Br. at 7–8.) Although graduation is a change of placement, S.M. argues that while a due process proceeding is pending, the IDEA's stay-put provision controls. (*Id*. at 9.) S.M. argues that allowing a school district to deny a parent the chance to object to graduation would be "dangerous" and "destroy the procedural protections" of the IDEA. (*Id*. at 10.) S.M. adds that D.M. is entitled to stay-put because it is an automatic preliminary injunction in the underlying due process petition. (*Id*. at 15.) Additionally, S.M. argues that, contrary to Trenton BOE's contention, D.M. has not automatically graduated because she is entitled as a parent to object. (*Id*. at 17.) Lastly, in addition to arguing that Trenton BOE has not met its burden for a preliminary injunction (*id.* at 21), S.M. argues that the Court cannot issue a declaratory judgment because it lacks subject matter jurisdiction over the "graduation issue." (*Id*. at 26.)

The Charter School argues in support of D.M. that Trenton BOE is incorrectly asking the Court to "fully and substantively adjudicate the issue of graduation . . . through motion practice and under the guise of an emergency." (Letter Br. at 4.) The Charter School argues that a declaratory judgment that D.M. lawfully graduated is inappropriate. (*Id*. at 5.) The Charter School further contends that "even if an argument can be made that graduation is excluded from the 15-day notice requirement . . . the federal Court should not issue a declaratory judgment on a state law issue" when "the state law at issue is uncertain or undetermined." (*Id.* at 8 (quotation marks omitted)).

B.  ANALYSIS

Here, the ALJ did not err in concluding that S.M. timely sought a due process proceeding. Therefore D.M.'s then-current placement was based on the January 2024 IEP implemented by the Charter School.

Having carefully reviewed the record *de novo*, the Court finds as follows.  D.M. had numerous IEPs throughout his education at the Charter School (the April 2024 and January 2024 IEP) and one IEP once he started in the Trenton Public School District (the June IEP).  After Trenton BOE created its June IEP stating its intent to graduate D.M., S.M. filed for a due process hearing on July 2, 2024, seven days after receiving the proposed Trenton IEP.  By timely requesting a due process hearing and refusing to sign documents at the June IEP meeting in which she was present, S.M. made it clear that she objected to her son's graduation given that she wanted him to receive free public education transition services, which would have been unavailable to D.M. if he graduated and was no longer a student.  Because S.M.'s due process proceeding request was timely, and because under N.J. Admin. Code § 6A:14-2.3(h)(3) a change of placement is not implemented if a parent disagrees or requests a due process hearing, Trenton BOE's June IEP and D.M.'s graduation, which constituted a change of placement, was not yet implemented.

This conclusion is supported by the underlying policy of the IDEA "that parents and schools [should] work[] together to design an IEP . . . to reach the statute's goal of" providing children with a free and appropriate public education.  *M.R.*, 744 F.3d at 117.  Any other conclusion would run contrary to the statute's goal.  As the Supreme Court has repeatedly emphasized, allowing a parent to participate in this process is "as important as substantive rights." *P.N.*, 282 F. Supp. 2d at 237 (citing *Rowley*, 458 U.S. at 205–206).  A parent must have the "opportunity to present complaints concerning an aspect of the local agency's provision of [a free and appropriate

11

public education]; and an opportunity" for a due process hearing. *Honig*, 484 U.S. at 311–12. And because these procedural safeguards are in place to protect S.M. and D.M. in these exact situations, the ALJ was correct that D.M. is entitled to stay-put in his then-current placement—the January IEP—until the underlying due process petition has been resolved.

The Court further finds that notice of D.M.'s graduation was inadequate under N.J. Admin. Code § 6A:14-2.3(g) and (h) given that Plaintiff did not provide the notice to S.M. "at least [fifteen] calendar days prior to the implementation of a proposed action." N.J. Admin. Code § 6A:14-2.3(h). Although graduation is a change of placement under N.J. Admin. Code § 1:6A-14.11, that section does not displace the requirement that notice must be given to a parent and that a parent be given every opportunity to present complaints about their children's education.

In this case, D.M. formally enrolled with the Trenton BOE on June 3, 2024. D.M.'s IEP meeting took place on June 21, 2024, three days prior to graduation. Therefore, the IEP was to last only three days. Swiftly providing D.M. with what S.M. characterizes as a "sham" diploma does not overcome a parent's right to challenge their child's placement if such a challenge is timely and pursuant to the New Jersey Administrative Code, IDEA, and other relevant state and federal statutes and regulations, which was the case here.

Therefore, the Court finds that the ALJ did not err in (1) failing "to recognize that emergent relief for issues involving graduation must be filed prior to graduation," (2) aiming "to resolve an alleged procedural violation which is appropriate for due process hearing only," and (3) ordering "that Trenton Public Schools rescind D.M.'s lawfully issued diploma." Accordingly, the Court will deny the relief requested by Plaintiff.[3]

---

[3] Although it appears that some responsibility for the urgency of the proceedings before the ALJ and this Court may stem from Defendants' last-minute decision to seek D.M.'s transfer to Trenton public schools, this has no impact on the Court's findings of fact and conclusions of law which are based on the complete record before it.

## V. CONCLUSION

For the reasons stated above, the Court will **AFFIRM** the Order of the ALJ and **DENY** Plaintiff's application for emergency relief.  An appropriate Order will follow.


Date: **November 4, 2024**

s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**
